clearly that an express trust was intended to be created. As was said
in Matter of Hawley, 104 N. Y. 250 at page 261, 10 N. E. 352, at page
356:

> "To constitute a testamentary trustee, it is necessary that some express
> trust be created by the will. Merely calling an executor or guardian a trustee
> does not make him such. Every executor and every guardian is, in a general
> sense, a trustee, for he deals with the property of others confided to his care.
> But he is not a trustee in the sense in which that term is used in courts of
> equity and in the statutes."

In Post v. Hover, 33 N. Y. 593, relied upon by the appellants' counsel,
while the trustee was denominated guardian, yet his authority was
minutely set out in the will, and the duties imposed upon him as the
custodian of the property of the infants signified that his functions
were those of a trustee. The bare name attached to the authority, we
concede, does not determine conclusively its character. That is fixed
by the obligations accompanying the transmission of the authority.

If Burdick had prescribed the extent of this power, defined it in his
will, the nature of it would have been made manifest, and would over-
ride a contrary designation by name. There is nothing in this instru-
ment to indicate that the testator used the word "guardians" with any
other than the ordinary signification. It is apparent from the fact
that he appointed guardians of the person, as well as of the property,
of these infants that he was not aware that the statute vested the
guardianship in their mother upon his decease, and that he could not
usurp her right. Probably if he had known of this limitation of his
authority, he would have vested his estate in trustees, prescribing their
duties with reference to it. We cannot cure this omission or lack of
knowledge on his part. The courts indulge in great latitude in con-
struing a will to make effectual the intention of the testator, but they
cannot make a new will for him.

There is grave doubt as to the power of the testator in any event
to name one person as guardian of the person and another of the es-
tate of his children (Matter of Brigg, 39 App. Div. 485, 57 N. Y.
Supp. 390, affirmed 165 N. Y. 673, 59 N. E. 1119); but we do not
deem it necessary to pass upon this question.

The decree should be affirmed, with costs of all parties to be paid
out of the fund. So ordered. All concur, except WILLIAMS, J.,
who dissents.

---

(110 App. Div. 443)

## BENNETT v. IRON CLAD MFG. CO.

(Supreme Court, Appellate Division, Fourth Department. January 3, 1906.)

PATENTS—CONTRACTS—ROYALTIES—RECOVERY.

> Defendant acquired the right to manufacture and sell plaintiff's pat-
> ented article during the life of the patent, and agreed to pay plaintiff
> a royalty on each article manufactured. On defendant's failure to pay
> the royalties, plaintiff recovered judgment for royalties and for the
> cancellation of the contract. The judgment was affirmed on defendant's
> appeal. Pending the appeal it continued to make and sell the article.
> *Held*, that plaintiff was entitled to recover the royalties specified in the
> contract on the articles made pending the appeal; his failure to procure
> an injunction restraining the manufacture and sale pending the appeal
> not precluding a recovery on the contract.
>
> Spring and Hiscock, JJ., dissenting.

Appeal from Trial Term, Herkimer County.

Action by Lewis Bennett against the Iron Clad Manufacturing Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

The action was commenced in December, 1904, to recover 10 cents for each sheet-metal basket alleged to have been manufactured by the defendant under the contract hereinafter referred to, which form or kind of basket was invented and caused to be patented by the plaintiff, and for the privilege of manufacturing and selling which the defendant promised and agreed to pay to the plaintiff 10 cents per basket as royalties.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

Everett E. Risley, for appellant.
Robert W. Hardie, for respondent.

McLENNAN, P. J.   The facts must be learned solely from the complaint, as it was dismissed upon the ground that it did not state facts sufficient to constitute a cause of action.   In such complaint it is alleged in substance that the plaintiff is the owner of two patents which relate to and cover a certain kind of metal basket, and that in September, 1896, the parties entered into a contract in writing by which the plaintiff sold, assigned, and transferred to the defendant the exclusive right to manufacture and sell such baskets during the life of the patents, and also agreed to furnish certain dies and tools made and owned by the plaintiff for the purpose of such manufacture.   The defendant agreed to pay to the plaintiff 10 cents for each metal basket so manufactured by it, agreed to keep a correct account of the baskets so made and sold, and to submit such account to the plaintiff semiannually, and at all times to permit the plaintiff to examine its said books of account relating thereto.

It is further alleged that after making such contract, and after the plaintiff had furnished tools and dies of the value of $468, the defendant commenced the manufacture and sale of the baskets in question, made reports of such sales, and paid the royalties specified in the contract until the year 1900, when it neglected and refused to make reports or pay any such royalties, although it continued to manufacture and sell the baskets.   It is also alleged that the plaintiff thereupon commenced an action in the Supreme Court against the defendant, based upon the contract and the nonperformance thereof by the defendant; that the defendant appeared in the action and answered by denying the plaintiff's allegations; that the issues thus raised were referred to a referee to try and determine the same; that the action was tried and decided by the referee in favor of the plaintiff.   The report of the referee was made a part of the complaint herein, and by reference thereto it appears that the referee determined that the plaintiff was the owner of the patents referred to; that the parties entered into the contract set forth in the complaint in that action; that the tools, dies, and machinery furnished by the plaintiff should remain in the possession of the defendant during the continuance of the contract; that the said contract was for the full term of the life of the letters patent; that the contract was fulfilled up to January 1, 1900, when defendant committed a breach

thereof. The referee found as a conclusion of law that by failing to comply with the terms and conditions of said contract the defendant became liable to pay, and plaintiff entitled to recover from it as royalties between January 1, 1900, and September 30, 1902, the sum of $572.20, and that the contract be adjudged forfeited and canceled, and the tools, dies, and machinery furnished by the plaintiff should be returned to him pursuant to the terms of the contract, or, if not so delivered, that plaintiff recover their value, the sum of $468.

The complaint also alleges that after the decision of said action by the referee and on or about July 15, 1903, judgment was entered therein upon such report; that on or about July 16, 1903, the defendant served a notice of appeal from said judgment to this court and furnished the usual undertaking to stay execution; that said appeal was heard on its merits and affirmed by this court in January, 1904; that in February, 1904, defendant took an appeal from the judgment of affirmance to the Court of Appeals, and gave an undertaking pursuant to section 1327 of the Code of Civil Procedure; that the appeal was dismissed by the Court of Appeals and the remittitur from that court filed in Herkimer county clerk's office June 9, 1904.

It is then alleged in the complaint:

"That the defendant, during the pendency of said appeals, and until October 10, 1904, remained in possession of said tools and appliances and continued to make and sell and offer for sale sheet-metal baskets within the terms of said contract and have sold 6,441 sheet-metal baskets. That the defendant has manufactured and now has on hand, as this plaintiff is informed and verily believes, many thousand sheet-metal baskets covered by the contract, and the defendant is liable to the plaintiff at the rate of 10 cents per basket for all baskets sold and for all baskets made and on hand for sale. That the precise number of metal baskets which the defendant has on hand is unknown to the plaintiff, but on information and belief he alleges that they do not exceed ten thousand. Wherefore the plaintiff demands judgment against the defendant for the sum of $2,000, with interest from October 10, 1904, besides costs."

It is thus seen that the action is brought solely to recover the royalties specified in the contract, and which it is alleged became due and owing to the plaintiff by reason of the manufacture and sale of the patented baskets by the defendant during the pendency of the appeal from the judgment, which, among other things, declared such contract to be forfeited and canceled. We think the complaint states a good cause of action.

The defendant, having continued to manufacture and sell the baskets covered by plaintiff's patents after judgment was rendered against it declaring the contract "forfeited and canceled," and while contesting by appeal the correctness of such judgment, incurred the liability imposed by such contract, notwithstanding such judgment. The plaintiff, having failed to dissent from such manufacture and sale by the defendant by procuring an injunction or taking some other summary remedy during the pendency of its appeal, was not thereby precluded from insisting upon compliance with the terms of the contract as to royalties which became due after the rendition of such judgment. The defendant by its acts in the premises assumed to treat the provision in the judgment that it was not entitled to manufacture as erroneous, and ought not now to be permitted to disclaim liability for its acts un-

der the contract in question. The plaintiff at all times asserted, and successfully defended, the validity of the judgment, but it did not deem it expedient to compel obedience by injunction or other summary remedy, and it must be held that the provision declaring the contract forfeited, being for the benefit of the plaintiff, was one which he might waive if he so desired, and avail himself of his right of action thereunder so long as the defendant, by proceeding precisely along the terms thereof, conceded its validity to all intents and purposes, although disputing that fact as to a period of time prior to the one during which it was so operating under the contract.

The plaintiff had already obtained a judgment in his favor under the contract. His confidence in the validity of his contract, belief in the defendant's solvency, and other considerations, may have been deemed sufficient by him to warrant him in allowing the defendant to proceed without restraint by legal proceedings. A holding that the defendant could proceed under the terms of its contract without incurring the liabilities thereby imposed upon it would be not only unreasonable, but exceedingly unjust to the plaintiff. It is quite possible that, unless the plaintiff can recover the royalties specified in his contract, he will be unable to recover any sum whatever. He may not be able to prove damages independent of his contract; but, even if so, it ought not to be held that the defendant might manufacture and sell the baskets covered by the plaintiff's patents with impunity and without incurring liability. By the action of the parties the provision of the judgment annulling and ending the contract was waived, and the plaintiff is entitled to recover the royalties specified in the contract which accrued on account of the manufacture and sale by defendant of such articles during the pendency of the appeals. The cases cited by appellant's counsel (Union Mfg. Co. v. Lounsbury, 41 N. Y. 363; Hyatt v. Ingalls, 124 N. Y. 93, 26 N. E. 285, and Skinner v. Wood, 140 N. Y. 217, 35 N. E. 491, 37 Am. St. Rep. 540) are analogous in principle and establish the plaintiff's right to recover in this action.

Judgment reversed and new trial ordered, with costs to the appellant to abide event. All concur, except SPRING and HISCOCK, JJ., who dissent.

SPRING, J. (dissenting). Plaintiff was the inventor of a metal basket. In September, 1896, he entered into an agreement with the defendant, whereby the latter agreed to manufacture said patented baskets, paying the plaintiff 10 cents for each basket "so made and sold by the party of the second part during the continuance of this agreement." The agreement further provided that the plaintiff was to furnish to the defendant the tools which had been used in the manufacture of said baskets and which were then in the possession of the party of the second part. An action was subsequently commenced by the plaintiff to recover the royalties, his due by reason of the manufacture and sale of these baskets, and we assume, although the complaint in that action is not before us, asking also for a cancellation of the agreement. The action was tried before a referee, and in his report he directed judgment in favor of the plaintiff, canceling the contract and awarded a money judgment. The report further directed the defendant to de-

liver to the plaintiff the tools and machinery furnished him. Judgment was entered July 15, 1903, conformably to the report adjudging that the contract be "forfeited and canceled," and in other respects following the conclusions of law determined by the referee. The defendant appealed to the Appellate Division, giving the usual undertaking to stay the execution. The judgment was affirmed, and upon appeal to the Court of Appeals another undertaking was given also to stay execution and pursuant to section 1327 of the Code of Civil Procedure. The appeal was dismissed in the Court of Appeals. No undertaking was given, as is permitted by section 1328 of the Code of Civil Procedure, to stay that part of the judgment which directed the delivery of the tools to the plaintiff, so that he might at any time have obtained the possession of that property.

After the decision by the Court of Appeals this action was commenced. The complaint sets out the agreement between the parties, the judgment recovered in the prior action, the appeals therefrom, reciting the conditions of the two undertakings, which merely stayed execution, and the termination of that action. In the seventh paragraph it is alleged that "during the pendency of said appeals, and until October 10, 1904," the defendant continued manufacturing and selling said baskets, and has now a large quantity of the same on hand, for each of which it is liable to pay the plaintiff 10 cents. The theory of the cause of action seems to be that the defendant is liable to account to the plaintiff for manufacturing and selling the baskets pending the appeal as if the contract was still in force, although asserting its invalidity. The judgment abrogated the agreement between the parties. A remedy available to the plaintiff by injunction, or for an infringement of his patent, or to recover damages independently of his agreement, or to adopt any other course to which he may have been entitled, could have been resorted to immediately upon the entry of the judgment. The undertaking did not assume to stay any remedy permissible to the plaintiff, but only prevented him from collecting the sum awarded by the judgment. He relies upon the annulment of the contract which dates from the entry of the judgment. The plaintiff may be entitled to recover the contract price for baskets made and sold during the pendency of the action and prior to the entry of the judgment; but the action is not brought for any such purpose. Such an action would rest upon an existing agreement, while the basis of the one now pending is upon the dead contract, and made so by a judgment recovered at the instance of the plaintiff. He cannot annul the agreement and still continue to reap the fruits of it. The rights of the parties are the same as if no contract had ever been made, and there is no claim in the complaint that new life has been imparted to it, or that it has been recognized in any way by the defendant as a subsisting agreement. The plaintiff does not claim that the agreement has been reinstated, nor does he seek its revival. Nor does he elect to waive the judgment of cancellation. The allegation that the defendant has continued manufacturing "within the contract" is a conclusion of law. At best, the plaintiff must allege that he elects to consider the contract in force. He cannot in one clause insist upon its abrogation for his own benefit and in the succeeding one assert its validity also for his own benefit.

He must adopt one course or the other. He may waive the judgment, but he does not do this. Upon the entry of the judgment a new relation arose between the parties. If that is to be altered at the instance of the plaintiff, he must set forth facts showing his purpose, or that of both parties to disregard it.

The complaint alleges that the plaintiff demanded possession of the tools furnished to the defendant, as provided in the agreement, and the failure to deliver the same, and seeks to recover their value, but that alleged cause of action was withdrawn by the plaintiff on the trial.

The judgment and order should be affirmed, with costs.

HISCOCK, J., concurs.